BYRON E. WARREN v. HENRY F. GUTCHES.

*Landlord and tenant—Lease—Forfeiture—Right of possession—Execution—Replevin.*

The owner of a newspaper who leases the entire plant, including the good-will of the business, for a term of years, with covenants for the continued publication of the paper, and for the return of the leased property and good-will at the expiration of the lease, and in case of a breach to have the right of immediate possession, can maintain replevin against a creditor of the lessee who levies upon the leased property as the property of the lessee.

Case made from Calhoun. (Hooker, J.) Submitted on briefs June 14, 1888. Decided October 5, 1888.

Replevin. Plaintiff brings error. Reversed, and judgment entered for plaintiff. The facts are stated in the opinion.

*Rienzi Loud (Hatch & Cooley,* of counsel), for appellant, contended for the rule stated in the opinion, and cited the authorities therein referred to.

*M. D. Weeks,* for defendant.

LONG, J. This is an action of replevin, brought by the plaintiff in the circuit court for Calhoun county, to recover possession of one paper-cutter, one Gordon press, and one Universal printing-press.

The property taken under the writ had been in the possession of Robert L. Warren under a written lease from the plaintiff, and was used by the lessee in the conduct of his business as editor and proprietor of the Albion Recorder. It was levied upon by virtue of certain executions against Robert L. Warren, the defendant claiming the same to be the property of the lessee. The trial was had before the court without a jury, and at its conclusion the court found the following facts and conclusions of law :

" 1. The plaintiff is a resident of Bay City, Mich. In 1884, his brother, Robert L. Warren, a printer by trade, was desirous of acquiring a paper published in Albion, known as the ' Albion Recorder,' and opened negotiations with a Mr. Cooper, its owner, with a view to its purchase.

" 2. These negotiations resulted in the purchase of the property by the plaintiff, who paid the entire consideration therefor, and took a bill of sale of the office. He thereupon allowed his brother, Robert L. Warren, to use the property, who continued the publication of the Recorder as editor.

" 3. This he did in his own name, purchasing necessary stock and supplies upon his own credit.

" 4. In 1884 he bought three presses, one a Prouty press, one Universal, and one Campbell. All were bought in the name of and billed to the plaintiff, and were paid for by him, unless it be a small balance on the Prouty press.

" 5. On February 14, 1885, the parties executed a lease of the property for five years, by which the plaintiff leased it to Robert L. Warren; the instrument providing that the document should date from May 1, 1884, which was the time of the original purchase.

" The following judgments were afterwards taken against Robert L. Warren, without opposition by him, to wit:

| Name. | Date. | Damages. | Costs. |
|---|---|---|---|
| E. Brooks Pease. | May 29, 1886. | $105.98. | $2.90. |
| Bradner et al. | March 6, 1886. | 44.42. | 2.80. |
| Bingham. | March 6, 1886. | 19.15. | 2.80. |

" Said judgments were in actions commenced by summons that were returned personally served, and were regular in form and valid.

" 6. Executions were afterwards issued upon said judgments, and levied by the defendant upon the property in controversy, which was replevied in this suit by the plaintiff. The property consisted of articles purchased in the name of the plaintiff, and paid for by him in full.

" 7. The property replevied is not shown to have been any part of the consideration for the indebtedness upon which said judgments were rendered.

" 8. The property was taken from the possession of Robert L. Warren, by the officer, at the time of the levy.

" 9. Plaintiff was general owner of the property replevied at the time the suit was commenced, subject to the rights of Robert L. Warren under the lease."

### CONCLUSIONS OF LAW.

" 1. The plaintiff was not, at the time the suit was commenced, entitled to the possession of the property; such right of possession being vested in his brother, Robert L. Warren, by virtue of his lease.

" 2. Not being entitled to such possession, said plaintiff cannot maintain replevin.

" 3. Defendant is therefore entitled to a judgment for the return of the property, with costs."

Exceptions were filed to such findings, and on August 18, 1887, judgment was entered in the cause in favor of the defendant for a return of the property, with costs. The proceedings are brought to this Court by plaintiff on case made.

The lease referred to in the findings reads as follows:

"It is hereby agreed between Byron E. Warren, of Bay City, Mich., party of the first part, and Robert L. Warren, of Albion, Calhoun county, Mich., party of the second part, as follows:

"The said party of the first part, in consideration of the rents and covenants herein specified, does hereby let and lease to the said party of the second part the following property, situate and being in the said village of Albion, county of Calhoun, State of Michigan, to wit: The good-will of the newspaper known as the 'Albion Recorder,' together with the presses, types, boiler and engine, furniture of all kinds,—an inventory of which property is hereto attached and made a part of this lease,— for and during the term of five years from the 1st day of May, 1884, on the terms and conditions hereinafter mentioned, to be used in carrying on the business of publishing a newspaper and doing job-work in said village of Albion:

"*Provided* that, in case any rent should be due and unpaid, or if default shall be made in any of the terms, conditions, or covenants herein contained on the part of the second party, then it shall be lawful for said party of the first part, his certain attorney, heirs, representatives, or assigns, to repossess said property, and to go upon the premises occupied by said second party with said property, and to take, use, and have said property, with the good-will of said business, and the name of said newspaper, as if this lease had never been made.

"And the said party of the second part does hereby hire the said property for a term of five years from the date hereinbefore mentioned, and does covenant and promise to pay said first party, his representatives and assigns, an annual rent of $162 in equal quarterly installments, in advance. And he further agrees, as additional consideration for the use of said property, to keep said property insured in the name of and for the benefit of said first party, in such amounts and companies as said first party

shall direct ; and shall pay all taxes and assessments that may be assessed upon or against said property.

" The said party of the second part further agrees, at his own expense, during the continuance of this lease, to keep the said property and every part thereof in as good repair, and at the expiration of the term yield and deliver up the same in as good condition, as when taken, damage by the elements excepted ; and that he will, in case said property, tools, furniture, or outfits, or any part thereof, shall wear out, renew the same by purchase of new materials, which new materials shall be the property of the said first party.

" The said second party further agrees that he will not assign or transfer this lease, or sublet said property or any part thereof, without the written assent of the said party of the first part.

" And the said party of the first part does covenant with the said party of the second part that said party of the second part, on paying the aforesaid installments, and performing all the covenants aforesaid, shall and may peacefully and quietly have, hold, and enjoy the said property for the term aforesaid.   The covenants, conditions, and agreements made and entered into by the several parties hereto are declared binding on their respective heirs, representatives, and assigns.

" This instrument is to date from May 1, 1884.

" Witness our hands and seals this 14th day of February, 1885.        BYRON E. WARREN.   [L. S.]
          " ROBERT L. WARREN.   [L. S.]"

The facts found by the circuit judge are supported by evidence, and are conclusive.   There arises but one question for our consideration.   Under the facts found, and under the terms of this lease, had the plaintiff such a right of possession of the property, at the time of the commencement of the suit, as entitled him to maintain his action of replevin?

No question of fraud upon creditors is involved.   The finding of facts by the court is conclusive, and from such finding it appears that the plaintiff was the general owner of the property replevied at the time the suit was commenced; and the property forms no part of the considera-

tion for the indebtedness of Robert L. Warren, for which these judgments were rendered. The defendant took the property from the possession of Robert L. Warren under his execution levies, and sought to dispose of it, and apply the proceeds to the extinguishment of debts of Robert L. Warren. There is no pretense that the levies were being made upon his interest as lessee; but, on the other hand, the claim made was that the title to the property was in the lessee. Defendant now seeks to set up the claim, to defeat the plaintiff's action, that the right to possession is in the lessee, and not in the plaintiff. There is no privity between him and the lessee, whose right he sets up to defeat plaintiff's recovery. He took the property from the place where the plaintiff had the right to have it kept, and interrupted and interfered with the business which plaintiff had the right to have continued and maintained. Not only was the property replevied described in and conveyed by the lease, but the good-will of the business in which the property was being used was also conveyed under the lease, and any interference with the property and machinery by which the business was being conducted was an interference with the rights of the plaintiff in the premises.

The lessee would have had no right to take the property out of the business, and sell and dispose of it; and any attempt so to do would be a forfeiture of the covenants of the lease; and the defendant can invoke no aid from his process to do what the lessee would have had no right to do, and thus relieve himself from the character of a naked wrong-doer. One of the covenants of the lease is that the lessee shall, at his own expense, during the continuance of the lease, keep the property and every part thereof in good repair, and at the expiration of the term yield and deliver up the same in as good condition as when taken; and also shall keep the property insured in

the name of and for the benefit of the lessor, and pay all taxes assessed thereon.

It was the intention of the parties, as gathered from the terms of the lease, that the lessee should continue the publication of the newspaper for the term of five years, taking all the property described in the lease for that purpose, and, to enable him so to do, should have the good-will of the paper as thus established, and at the end of the term yield and deliver up, not only the property, but the good will thus leased to him; and any interference with the business so established and to be conducted amounted to a forfeiture of the covenants of the lease, and would entitle the plaintiff to repossess himself of the property; and as against the general owner of the property a mere naked trespasser could not set up the possessory rights of the lessee to defeat the action. The levy impaired the good-will of the business. It put the property beyond the reach of the lessee, so that he could not keep it in repair, or keep it insured. The levy was a step towards divesting the lessor's title, and assigning it to another. Every one of these results was a breach of the covenants of the lease.

A lessee of chattels cannot sell the same. If he does he is liable to an action of trespass. Wood, Landl. & Ten. 296. A creditor cannot do anything which the lessee cannot do. *Ashley v. Wright,* 19 Ohio St. 291. The property was turned over to the lessee to enable him to conduct the business of publishing a newspaper, and to do job-work; and it was to these purposes the property was to be applied, and these purposes were entirely defeated by. the levy of the execution and the removal of the property. The lessee had no right to do this, and his creditor could gain no greater right under his execution. *Bassett v. Armstrong,* 6 Mich. 397; *Tandler v. Saunders,*

56 Id. 142 (22 N. W. Rep. 271); *Ashley v. Wright,* 19 Ohio St. 291.

Some question is raised that, even if the defendant had judgment, it could not be for a return of the property, under section 8342, How. Stat., but that, he having only a lien upon and special interest in the property, the same should have been ascertained by the court, and judgment given for such amount, and finding the general ownership of the property in the plaintiff. This is undoubtedly the correct rule; but we need not discuss that question, as, from the view taken by us upon the other question, it becomes wholly immaterial.

The judgment upon the facts found by the court below and under the lease should have been in favor of the plaintiff, and the judgment will be reversed.

We see no necessity for remanding the case for a new trial, and judgment will therefore be entered in this Court in favor of plaintiff, with costs of both courts.

The other Justices concurred.